May it please the Court, Matthew Brill for Appellant Time Warner Cable. The District Court's grant of summary judgment was erroneous in two different respects. First, there was no evidence to support the conclusion that Time Warner Cable employed an automatic telephone dialing system, as that term is defined by the Telephone Consumer Protection Act. And second, awarding treble damages was improper, because even if there were violations, they cannot be upheld as willful or knowing violations. In our briefs, we argued that the application of the statute by the District Court was ultra virus, because the statute requires a finding that dialing equipment have an actual capacity to generate random or sequential numbers. We also argued in the alternative — He doesn't agree with you, right? That's correct, Your Honor. And so what is the effect of that on us in light of the Hobbs Act? Are we entitled to say no, they're wrong? I think it's a difficult question, Your Honor. This Court hasn't specifically reached that question. Most other circuits have concluded that if you're seeking collaterally to undermine the statute, automatically attacking the Hobbs Act would pose a bar, which is why I want to focus today on the second argument, the alternative argument we made in our brief, which doesn't pose a Hobbs Act question. And that is that even if we assume that the FCC is right, that a potential capacity to generate random or sequential numbers is sufficient, there's still not evidence in the record below sufficient to support summary judgment. So that's the argument I'd like to focus on today, because I do think the D.C. Circuit is likely to rule soon in the ACA international case, and this Court would have the benefit of that decision. That case was argued in October. But there's really no reason for us to focus on the statutory question, because it's entirely sufficient that the record lacks evidence of any capacity. Do you agree that if the D.C. Circuit upholds the FCC's ruling, that certainly in that case, your first argument, so to speak, is over? Again, Your Honor, this Court hasn't reached that question. I think the weight of authority would mean we would be out of luck. I know, but you're telling us you don't really want to spend a lot of time on that issue. We are content to live by the D.C. Circuit's decision. We're not taking the position that this Court should second-guess that decision. So let's assume that the D.C. Circuit will uphold the FCC and that the statute is appropriately construed as requiring only a potential capacity to generate and store and dial random or sequential numbers. The problems for plaintiff and the core error in the district court's opinion is that there was no evidence whatsoever, even of such a potential capacity to generate a potential to use a random or sequential number generator. That's an essential element of the statute, and even the FCC's opinion, at its order at paragraphs 15 through 18, makes clear that there has to be a case-by-case, evidence-based determination of whether there's a potential capacity. And specifically, what the FCC said— How is the plaintiff to obtain information about that capacity? Your folks said you don't have any manuals, you don't have any documentation on how your machine works. In fact, I'm not sure whether it's a machine. Is this a piece of hardware or a piece of software? It's a combination of both, Your Honor. I think what the FCC said about this is that if equipment today doesn't have the capacity for random or sequential number generation, a plaintiff, in essence, has to show what modifications could be made to that equipment, the development of additional software code. Where they went wrong, and where the district court went wrong, was they never even attempted to prove that essential element of the claim. What they said in their statement of undisputed facts—and this is at page 22 of the Joint Appendix—is that the IVR has the capacity to store numbers, and the IVR has the capacity to dial such numbers. But it didn't even assert, much less prove, that the IVR could be modified to generate random or sequential numbers. And even the FCC, again, concedes at paragraph 15 that that's a requisite element of any TCPA violation. So they effectively tried to short-circuit the analysis and take the position that the statute is violated whenever you're dialing numbers from a stored list of numbers, from any kind of curated list. That's just not so. How is that different than the predictive dialers that the FCC has said are automatic dialers? The predictive dialers are a particular type of equipment that make predictions about what time of day someone will be home. In the 2003 order, the FCC had a fairly cursory analysis. That order was primarily concerned with establishing the do-not-call list and addressing other questions. In a brief passage, it said predictive dialers should be considered auto-dialers, and it didn't really grapple with this capacity question. Its 2015 order, the one now pending in the D.C. Circuit, supersedes that analysis and acknowledges, again at paragraph 15, that the, quote, requisite capacity is one that can dial random or sequential, generate and dial random or sequential numbers. It doesn't need to be a present ability, according to the FCC, but again, there needs to, it says at paragraph 16 of its order, that there needs to be more than a theoretical modification that would sweep in. And there was a big debate before the FCC about whether an iPhone could be an auto-dialer. And the dissenting commissioner in the lead, who's now the chairman, Ajit Pai, said under the FCC's definition, everything is an auto-dialer, because you could surely download an app onto an iPhone, and if your owner calls a friend, even if you're not using any auto-dialer capacity, you will have violated the statute with that express consent. The FCC said not so. It's a case-by-case determination. You need to look specifically at what modifications could be made to turn something into an auto-dialer. So that may not be a huge hurdle for a plaintiff on remand, but they just didn't engage in the analysis. And what this Court said in the Vermont Teddy Bear case and others— If it goes back on remand, is there more discovery possibility? Well, certainly, Your Honor. I mean, they deposed our in-house person, David Zitko. They simply never asked him what modifications might be feasible, what software development might occur to create random or sequential number generation. They asked only, can it store numbers? Can it dial such numbers? And can it do so on an automated basis? And they did establish that there's an automated function to dial numbers from a store list, but they just didn't establish this random or sequential number generation, which— You know, the statute is clear. It says to store or produce numbers using a random or sequential— Well, it's not clear. Are we dealing with the FCC? Well, again, the FCC says, even under its very expansive view, which we don't agree with, that that is a required element under the statute, random or sequential number generation. The only debate for the FCC is, does it need to be actual and existing or just potential? They say potential, but again, they say there must be evidence of what modifications, because again, paragraph 16 says it can't be merely theoretical. Here, we didn't even engage in the debate. They didn't get into at all what capabilities could be added to our system. Suppose on remand, they do ask one of your people or they get some outside— The inside person either says, all we need to do is write a few more lines of code and it would do it, or there's some further exploration of the technicalities, and they get an expert to come and say, oh, all you need to do is write a few more codes. Would that do it? It might, Your Honor. In the meantime, the D.C. Circuit may have reversed the FCC. And the FCC itself— But we're operating today, you said, on the assumption that they approve the FCC's order. Yeah. I mean, we would certainly argue that our system is designed specifically not to have those functions, and there may be a battle of the experts about what quantum of evidence is needed to show these modifications. The point, again, though, is that they simply didn't engage in that analysis. They didn't assert anything, and the error in the district court opinion is apparent when the court says that the plaintiff alleged and the defendant didn't credibly refute that the IVR has the requisite capacity. Of course, it's not sufficient for summary judgment to make an allegation, and it's not our job to refute a bare allegation. And that's all they have in this record. Thank you, Mr. Brewer. You've reserved time, of course. We'll hear from Mr. Taylor. Thank you, Your Honors. May it please the Court, Stephen Taylor for the appellee. The IVR system used by Time Warner Cable is a fully automated system. Every night, it runs a query across the database. It collects phone numbers pursuant to preset criteria. It stores those numbers, and then it dials them throughout the next day pursuant to a timing function as to the number of calls it's set to make. At no point is any human involved in dialing in any respect. In 2003, the FCC in the 2003 FCC order said the statutory definition of an automatic telephone dialing system under the TCPA contemplates systems that store or produce telephone numbers. And that's at paragraph 132 of the 2003 order. The FCC, as we argue in our brief, looking— Do you agree that the 2015 order is what's really controlling here? I do not. The 2015 order, the crux of the argument, certainly the argument for the D.C. Circuit now is— So your position is if the FCC order, 2015 order, is struck down by the D.C. Circuit, you still get summary judgment? If they strike it down and don't say anything about prior orders, we certainly do, because we filed summary judgment before that order was issued under the law at the time as it's been developed, the 2003 order in 2012 and in numerous cases in this district interpreting it. Okay, so I think I understand your position. You'll have more time, I'm sure, to explain it further that under the 2003 order, you still win. Under the 2015 order, if we were to agree with Mr. Brill that the 2015 order requires a showing of the capacity to generate, even with modifications, some kind of random or sequential phone numbers, is there any evidence in the record of that? There is not evidence that the IVR itself generates the numbers. I understand that, but the question is—and, indeed, that's the question that you want us to think is the question— does it have—is there any evidence that it has the potential to be modified in such a way that it could? What I would say is if we look at the Dominguez opinion from the Third Circuit, there the Third Circuit, looking at the prior orders and the 2015 orders, said that an ATDS is a system that stores or produces telephone numbers. It has that capacity, which they themselves are randomly or sequentially generated. It doesn't say that the system has to randomly or sequentially generate. So to answer your question, if the system is capable of storing a number and then dialing the number without human intervention, the origin of that number, whether it's random or from a list, would meet that definition. So, yes, it does have the capacity. I can give you an example. Mr. Perez, the person that supplied the phone number which Time Warner called the plaintiff for, he could have theoretically have generated the number. Generating the number is from—you can do that on an Excel spreadsheet. That will generate a number. Under the Third Circuit's definition, if a generated number can be stored in the system and then dialed, it is an ATDS. Once a ten-digit number exists and can be stored, it can be an ATDS if it is then dialed without human intervention. This is what the FCC was getting at in 2003, that the origin of the numbers is not the determining factor because a system can store a random or sequentially generated number and then dial it. But what was going on was that companies were using dialing lists. So systems that, sure, they're able to store a randomly or sequential number, but they're also storing dialing lists and then dialing off of them. So under the 2003 order, or if the 2015 order is upheld or struck down, there is evidence that this machine has the capacity to store a number and then dial it. The origin of that number, if it has to be randomly or sequentially generated, sure, that's possible. It has that capability. In the 2003 order, the FCC, our position is that the 2003 order says that if a system can store and dial a list of numbers, it is an ATDS. Time Warner's position is that there has to be some element of randomness or a generating function in the process somehow. The FCC disagreed with that in 2003, and if you look at the actual statute, the statute provides a consent defense to liability, as it was written in 1991. That presupposes that when Congress wrote this, that calls were not always going to be random or sequential numbers. If a company used an automatic telephone dialing system to call somebody and had their permission, there would not be liability under the act. In order for that to be true, it's not going to be a random or sequentially generated number. It's a number that is coming from somewhere, put into the automated system, and then dialed. Congress, in 2015, amended the TCPA to say that the calls that were in regards to federally backed student loans did not require prior express consent. Federally backed student loans are not random or sequential numbers. Congress looked at this in 2015 and didn't amend it to say, okay, the statute needs to be changed so that calls to federal student loan recipients, those aren't random or sequential. There's a different provision of the act. It says it's unlawful to make a call using an ATDS or an artificial or prerecorded voice, and below, you argued that the calls, or at least some of them, were illegal under that provision as well, right? Correct. There was alternative basis of . . . Is that still . . . if we were to reverse the grant of summary judgment, is that argument still in the case? Yes. Time Warner has asked for summary judgment in their favor, but there's still 70 calls which I believe they concede a message was played, and on all the messages, this system, every time it called, it was going to use a prerecorded and artificial message. There would be an issue as to whether or not a message played on all the calls. That argument has not been abandoned, but that's not the basis for the summary judgment that you got, and that's why it's not being asserted here in this court by you. Correct. In the summary judgment decision, the judge did say that the calls were automated and there were prerecorded voices. Time Warner isn't challenging that aspect of it on the appeal. I'd like to speak briefly about the treble damages provision and the challenge of treble damages. The record evidence shows that Ms. King complained in October 2013 in a telephone call with Time Warner's vendor. The length of the call is approximately seven minutes. That's supported by her phone records, their phone records, and her declaration. They didn't present any evidence to refute that. At most, they could say Time Warner didn't have any evidence of the call, but whether their vendor did or didn't, they couldn't say. The judge was appropriate to grant summary judgment on the revoke and on the treble damages. So the knowledge of their agent is attributable to them is your position? Yes, for the revoke. How else is someone supposed to revoke consent if not to speak with the person who is calling? This was calls where she called, spoke with their vendors, or they called and she went through and spoke with their vendor, and revoked consent. Judge Hallerstein found that that fact plus the fact that they continued to call after she had sued merited the treble damages because it showed that they simply didn't care whether or not they were violating the TCPA in calling Ms. King. Does it make a difference that they maintained in court that they did not violate the TCPA? That doesn't sound like they knew they were violating it. That sounds like they contest whether they were violating it. Let me rephrase that. The standard is not that they have to knowingly violate the TCPA. The standard is we argue, first of all, that they have to intentionally engage in the conduct that violates the TCPA. Willful, and this is not willful as in a criminal statute. In a civil context, your argument is willful just means effective, almost the same thing as knowing, or maybe even a little less than knowing because it encompasses recklessness. Correct. And I would say Time Warner's argument would be that they need to know that they're using an automated dialer in violation of the act. That's a legal conclusion, that it's an automated dialer under the definition of the act. They know what it does. Right. And our position would be that they knew that they were using an auto dialer. Their terms and conditions with customers said that we can call you with an auto dialer. That's how they escaped liability for the first ten calls to Ms. King on the Perez account. The remaining . . . sorry, I lost my train of thought there, Judge. I apologize. So the treble damages was discretionary for the trial judge, and it was appropriately entered here.  Thank you, Your Honor. Mr. Brewer's reserves. Thank you. Counsel is arguing that even if the D.C. Circuit holds that there must be evidence of an actual capacity, and even if the FCC's 2015 order is struck down, they should still get summary judgment under the 2003 order from the FCC. That can't be right. The FCC superseded its cursory analysis from 2003. It revisited the very same statutory provision, and it recognized now that at the minimum that phrase using a random or sequential number generator has to be given some meaning. The Dominguez case, which Mr. Taylor cited, actually says the opposite of what he's characterizing it. In that case, Yahoo sought summary judgment because it said we're only dialing numbers from a stored list. We're not randomly or sequentially generating numbers. And the court remanded because it said although hardly a model of clarity, the FCC's orders hold that an auto dialer must be able to store or produce numbers that themselves are randomly or sequentially generated. And so they remanded for an evidentiary determination of whether either party could show modifications leading to that functionality. I would just quickly say on the treble damages provision that Time Warner Cable didn't know it was using an ATDS. As the Supreme Court said in Safeco, where there are a range of judicial opinions and there are statutory reasons to think you're not, it would defy reason and history and common sense to think that's a knowing or reckless violation. And we submit that in this area, there was no way we were intentionally calling the wrong party with payment reminders. Thanks very much, Mr. Brill. Thank you. We'll reserve decision, and we'll turn.